UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ISAAC BROADEN,

       Plaintiff,

v.

       Case No. 08-11625
       Hon. Lawrence P. Zatkoff
       Mag. Donald A. Scheer

REDFORD TOWNSHIP,
DAVID KUTEK,
BRIAN JONES,
JAMES MEADE,
ERIC WOODALL,
RICHARD CORY, and
BRIAN BOMMARITO,

       Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 10, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter comes before the Court on Defendants' motion for summary judgment [dkt 26]. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment.

## II.  BACKGROUND

Defendant Detective Sergeant David Kutek received information from a confidential informant that Plaintiff was involved in the illegal sale and possession of drugs out of a home located at 15526 Log Cabin, Detroit, Michigan. Kutek allegedly performed independent surveillance and investigation and determined that Plaintiff was the subject of an outstanding warrant in Florida. Kutek discovered that the residence in question belonged to a M. Broaden, later revealed to be Plaintiff's cousin. Kutek orchestrated a controlled buy of drugs from the Log Cabin address. Kutek then submitted an affidavit in support of a request for a search warrant, which was granted.

Around 10:00 p.m. on April 19, 2005, Plaintiff arrived by motorcycle at his cousin's home. Plaintiff apparently visited the residence to turn the house lights on in the event that his cousin was not at home. The lights were not on so Plaintiff parked his motorcycle and proceeded to the enclosed porch of the house. As Plaintiff put the key into the door lock, Defendants descended on the porch and ordered Plaintiff to freeze. When Plaintiff inquired into the meaning of the confrontation, Defendants reportedly stated, "You know why we're here." According to Plaintiff, Defendants then threw him to the ground and handcuffed him. At some point after Defendants applied the handcuffs, they allegedly struck Plaintiff in the back of the head with a blunt object, possibly a firearm. The force of this blow caused Plaintiff to fall forward, and he "smashed" his head on the ground because his hands were cuffed behind him. Plaintiff contends that Defendants kicked him while he was on the ground. At some point, Plaintiff maintains that he lost consciousness. Plaintiff had a small amount of marijuana on his person.

While Plaintiff regained consciousness, Defendants dragged him into the home and commenced searching the home. Defendants confiscated drug paraphernalia and, according to

Plaintiff, took pictures and documents unrelated to the search warrant. Defendants took Plaintiff to the Redford Township Jail, where he stayed overnight. Plaintiff states that Defendants never informed him why he was arrested. Defendant Kutek questioned Plaintiff about his relationship with Marlon Washington—a friend of Plaintiff who was suspected of involvement in a homicide that Kutek was investigating. Plaintiff consented to a polygraph test on the subject matter of his relationship to Washington and passed the examination. At no point during the polygraph test was Plaintiff asked about drug possession, use, or distribution. Upon completion of the polygraph examination, Kutek released Plaintiff without charging him or issuing him a citation despite the fact that Plaintiff had possessed a small amount of marijuana on Plaintiff's person.

Following his release, Plaintiff reportedly suffered severe back and head pain to the point that he was bedridden for several days. On April 29, 2005, ten days after his arrest, Plaintiff's mother insisted that he seek treatment at Botsford Hospital where he underwent a CT scan that revealed a potential subdural hematoma in his brain. Plaintiff was unable to drive and experienced periodic "seizure-like symptoms causing Plaintiff to pass out." Plaintiff now brings suit, alleging that Defendants used excessive force and conducted an unreasonable search and seizure. Plaintiff also argues that Defendant Redford Township bears liability for failure to train its police officers.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should

be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). With respect to excessive-force claims, once all relevant facts are established and all inferences are made in favor of the nonmoving party, "the reasonableness of [a defendant's] actions . . . is a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007).

## IV.  ANALYSIS

### A.  FOURTH AMENDMENT: EXCESSIVE FORCE

The Fourth Amendment protects individuals from excessive force by law-enforcement personnel. *Watkins v. City of Southfield*, 221 F.3d 882, 887 (6th Cir. 2000). The Court reviews claims of excessive force under a standard of reasonableness. *Saucier v. Katz*, 533 U.S. 194, 209 (2001). The Court accordingly views the use of force from the perspective of a reasonable law-enforcement officer on the scene rather than retrospectively. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The analysis is to be conducted under the totality of the circumstances and without regard to intentions or motivations. *Id.* at 397. The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Court's analysis must "embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

When resolving issues of excessive force, the Court must "carefully balance the nature of the intrusion on the [individual's] Fourth Amendment rights against 'the countervailing governmental interests at stake.'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Whether law-enforcement officials employed the least forceful alternative is not determinative in excessive-force claims. *See, e.g.*, *Harrell v. Purcell*, 236 F. Supp. 2d 526, 532 (M.D.N.C. 2002). Accordingly, "not every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment." *Burchett v. Kiefer*, 310 F. 3d 937, 944 (6th Cir. 2002).

The parties could not present more divergent versions of what transpired on April 19, 2005. On one hand, Defendants claim that they used no force whatsoever in the arrest of Plaintiff, whom they claim was cordial and cooperative. Their position has some evidentiary support. In Plaintiff's "Officer-Inmate Questionnaire," Plaintiff answered "No" to the question: "Have you fainted recently or had a recent head injury?" He also answered "No" to the question: "Do you have any other medical condition or problem we should know about?" Similarly, the written records associated with Plaintiff's polygraph examination indicate that Plaintiff had no dizzy spells, was not in pain, was not in any discomfort, and had only previously been unconscious for surgery purposes. Defendants' version of the facts is further supported by the fact that Plaintiff's booking photograph is void of any cut, scrape, abrasion, or other mark on Plaintiff's face, despite the fact that Plaintiff

allegedly smashed his face on the ground. Finally, Defendants observe that Plaintiff did not seek medical attention until ten days after the alleged assault.

In stark contrast to Defendants' recollection, Plaintiff maintains that he was struck in the back of the head by a blunt object after being handcuffed, causing him to "smash his face off the ground." Plaintiff argues that his version of the facts finds evidentiary support in his medical records, which indicate a possible "minimal subdural hematoma due to the patient's history." These medical records, however, do not establish conclusively Plaintiff's condition. Records dated May 2, 2005, indicate that "[f]urther evaluation does draw into some questions whether or not this is truly an area of acute blood" rather than a normal condition unrelated to anything pathologic. The same records state that Plaintiff denied any evidence of lost consciousness.

In instances where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Here, Plaintiff had multiple opportunities to express and document the fact that Defendants hit him in the back of the head, but he did not avail himself of these opportunities. Although Plaintiff testified in his deposition that he was suffering from headaches following his arrest, he indicated at the time of his arrest that he was in no pain and no discomfort. Plaintiff now claims that he lost consciousness after Defendants allegedly hit him in the head; however, Plaintiff told the polygraph examiner and William Rudy, D.O., that he had no prior loss of consciousness except for surgery purposes. The picture of Plaintiff taken after his arrest, which Plaintiff does not dispute, shows no cuts, scrapes, or abrasions despite the fact that Plaintiff allegedly "smashed" his face against the ground. The only evidence Plaintiff has in support of his version of the facts is the

medical observation that he possibly had a subdural hematoma ten days after his arrest. Without any concrete evidentiary support, no jury could reasonably return a finding in Plaintiff's favor. The Court GRANTS Defendants' motion with respect to Plaintiff's excessive-force claim.

### B.     UNREASONABLE SEARCH AND SEIZURE

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Probable cause means "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Probable cause exists where there is "a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)). Searches conducted pursuant to a valid warrant must be limited to the warrant's scope. *United States v. Hare*, 589 F.2d 1291, 1294 (1979).

In reviewing the sufficiency of evidence supporting probable-cause determinations, the Court restricts its inquiry to the four corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). The Court pays "'great deference' to the issuing magistrate's determination as to probable cause and recognizes that such a finding should not be set aside unless arbitrarily exercised." *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998). In order to secure a warrant, a law-enforcement official must "present evidence from which the magistrate judge can conclude from the totality of the circumstances, 'including the "veracity" and "basis" of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In the event that a warrant affidavit lacks

information regarding an informant's reliability, "courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532. An affidavit is sufficient "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, [such that] a neutral and detached magistrate may believe that evidence of a crime will be found." *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000). Anonymous informants typically "cannot establish probable cause alone." *Hale v. Kart*, 396 F.3d 721, 729 (6th Cir. 2005).

Plaintiff argues that the affidavit in this case was inadequate when considering that Kutek relied on an informant he had never previously used, that Kutek performed no background check on the informant, that the informant lacked personal knowledge about Plaintiff, and that the informant did not identify Plaintiff as the man who sold him drugs. In addition, Plaintiff contends that his search and seizure was pretextual in nature because Defendants actually wanted to question Plaintiff about his friend, Washington, who was a homicide suspect.

Kutek's affidavit specifies that he received information within the past week that Plaintiff had been selling marijuana out of a residence located at 15526 Log Cabin. The affidavit indicates that the informant described Plaintiff as a "black male, 27–28 years of age, 6-0 ft., with 'dreadlock' hair.'" Kutek represented that he conducted an independent investigation and arranged for a controlled purchase of marijuana from Plaintiff. The Magistrate Judge was satisfied that probable cause existed and issued a search warrant for all property potentially relating to drug transactions. Plaintiff accurately states that anonymous tips must be corroborated; however, such independent corroboration "may be established by a 'police-monitored controlled buy.'" *United States v. Henry*, 299 Fed. Appx. 484, 487 (6th Cir. 2008) (quoting *United States v. Hawkins*, 278 Fed. Appx. 629 (6th

Cir. 2008)). Kutek attained corroboration in the form of a controlled purchase of marijuana.

Plaintiff also argues that Defendants took items out of the Log Cabin house that were not germane to the search warrant and that Defendants did not list on the search-warrant return. Specifically, Plaintiff states that "[p]ictures were taken from the residence depicting Plaintiff and his friends . . . . [and] Plaintiff's girlfriend—who showed up at the residence while Defendants were still there—saw Defendants take out a small box of papers from the residence." Plaintiff is adamant that his cousin owned the house that was the subject of the warrant. Plaintiff has not alleged that any of the materials removed from the house belonged to him. The Court cannot conceive of how Plaintiff has standing to challenge the removal of items that are not his from a house that he does not own. *See, e.g.*, *United States v. Jeffers*, 342 U.S. 48 (1951) (standing predicated on possessory interest in both the premises searched and the property seized).

Finally, Plaintiff takes the position that Plaintiff's arrest for drug-related offenses was mere pretext to question Plaintiff about an unrelated homicide. This contention, however, is without merit. Defendants operated pursuant to a valid search warrant, premised on probable cause that drug activity was occurring on the premises in question. The fact that Defendants questioned Plaintiff about a homicide does not render his seizure invalid. *United States v. Williams*, 106 F.3d 1362, 1365 (7th Cir. 1997) ("[T]he ulterior motives of an officer, where an objective justification exists, do not invalidate a search."); *see also Whren v. United States*, 517 U.S. 806 (1996) (holding that allegation of pretext irrelevant when police had probable cause to believe that a traffic violation had occurred); *United States v. Palomino*, 100 F.3d 446 (6th Cir. 1996) (same).

Plaintiff cites to *United States v. Lefkowitz*, 285 U.S. 452 (1932) in support of his position. In that case, however, the officers arrested the defendants and used the arrest as pretext to search for

evidence. The court specified that "the searches were exploratory and general and made solely to find evidence of respondents' guilt of the alleged conspiracy or some other crime." *Id.* at 465. In contrast, Defendants in this matter had probable cause to search the residence on Log Cabin. The fact that Defendants questioned Plaintiff about an unrelated crime does not render the search unreasonable.

### C.     MUNICIPAL LIABILITY

Generally, a municipality cannot be held liable under 42 U.S.C. § 1983 on the theory of respondeat superior. Municipal liability lies only when injuries inflicted are done pursuant to the municipality's policy or custom. *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In order to state a claim under the theory of municipal liability, a plaintiff must "identify the policy, connect the policy to the City itself and show that a particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). A municipality may be liable for failing to train its officers if it can be shown that such failure was a deliberate or conscious choice by the municipality. *Kammeyer v. City of Sharonville*, No. 01-00649, 2006 U.S. Dist. LEXIS 24058, at *33–34 (S.D. Ohio Apr. 26, 2006). In this case, because the Court finds that the individual defendants are entitled to summary judgment, no constitutional violation has been established and the discussion of municipal liability is therefore moot.

## V.  CONCLUSION

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.


                                            S/Lawrence P. Zatkoff
                                            LAWRENCE P. ZATKOFF
                                            UNITED STATES DISTRICT JUDGE

Dated:  July 10, 2009

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 10, 2009.


                                            S/Marie E. Verlinde
                                            Case Manager
                                            (810) 984-3290